JOHN E. KELLY & another[1] *vs.* STEVEN A. MARX & another.[2]

Worcester. January 7, 1999. - February 10, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Real Property,* Purchase and sale agreement. *Damages,* Liquidated damages.

A liquidated damages clause in a purchase and sale agreement, providing that
   the seller would retain the buyer's deposit in the event of breach, was
   enforceable where, at the time the agreement was made, potential damages
   were difficult to determine and the amount of liquidated damages (in this
   case, five per cent of the purchase price) was a reasonable estimate of the
   actual damages. [878-882]

CIVIL ACTION commenced in the Superior Court Department on
November 28, 1994.

The case was heard by *Daniel F. Toomey,* J., on motions for
summary judgment.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Wayne M. LeBlanc* for the defendants.

*Howard E. Stempler* for the plaintiffs.

*Norman T. Byrnes,* for The Abstract Club & another, amici
curiae, submitted a brief.

*Robert S. Kutner,* for the Massachusetts Association of Real-
tors, amicus curiae, submitted a brief.

IRELAND, J. John E. and Pamela B. Kelly (plaintiffs) com-
menced this action in the Superior Court in November, 1994,
seeking to recover funds that they had paid to Steven A. and
Merrill S. Marx (defendants) as a deposit for the purchase of
the defendants' property. Both parties filed cross motions for
summary judgment. The Superior Court judge granted the mo-
tion of the defendants after concluding they were entitled to the
deposit because the liquidated damages clause in their agree-
ment was enforceable.

[1]Pamela B. Kelly.
[2]Merrill S. Marx.

The Appeals Court, in a two-to-one decision, reversed the judgment and ordered the deposit returned to the plaintiffs. *Kelly* v. *Marx*, 44 Mass. App. Ct. 825 (1998). Under the "second look" doctrine, contained in *Shapiro* v. *Grinspoon*, 27 Mass. App. Ct. 596, 604 (1989), the court reached this conclusion by examining both the circumstances at the time of contract formation *and* the actual damages suffered by the parties when the breach occurred. See *Kelly* v. *Marx*, *supra* at 826. The court concluded that the defendants were not entitled to keep the deposit because they suffered no actual damages, and, therefore, liquidated damages would serve as a penalty and not as compensation for a loss. See *id.* at 831. We granted the defendants' application for further appellate review, and now affirm the Superior Court judgment.

1. *Facts.* On March 18, 1994, the plaintiffs signed an offer to purchase residential real estate in Worcester for $355,000 from the defendants. The defendants accepted the offer, and the plaintiffs gave $1,000 to the defendants as a partial deposit. By early May, 1994, the parties executed a purchase and sale agreement (agreement). Clause eighteen of the agreement read: "If the BUYER shall fail to fulfill the BUYER'S agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages." The plaintiffs provided a deposit of $16,750 to the defendants once the agreement was signed, bringing their total deposit to $17,750, five per cent of the purchase price. The offer set September 1, 1994, as the closing date.

The plaintiffs never purchased the property. On August 9, 1994, they notified the defendants in writing to put the house back on the market because they were unable to sell their current home. On August 24, 1994, the defendants accepted the offer of other prospective buyers to purchase, and then signed a purchase and sale agreement with them on September 8, 1994. The new buyers purchased the property for $360,000 on September 20, 1994.

2. *Discussion.* We affirm the decision of the Superior Court because we reject the "second look" approach, and conclude that a liquidated damages clause in a purchase and sale agreement will be enforced where, at the time the agreement was made, potential damages were difficult to determine and the clause was a reasonable forecast of damages expected to occur in the event of a breach.

The Appeals Court, in deciding whether to allow liquidated damages, relied on the three-step analysis described in the *Shapiro* case.[3] First, the Appeals Court noted that potential damages were "within the ordinary range for a real estate purchase and sale agreement," and "difficult to predict at the time of contracting." *Kelly* v. *Marx, supra* at 829. Next, however, the court examined the agreement in light of the actual damages at the time of the breach, and concluded that liquidated damages were inappropriate because they would punish the plaintiffs, not compensate the defendants, who suffered no loss from the plaintiffs' breach.

Liquidated damages clauses which provide for the seller of real estate to retain the buyer's deposit are recognized in Massachusetts, see *Lynch* v. *Andrew*, 20 Mass. App. Ct. 623, 627 (1985), and, as both parties concede here and the Appeals Court concluded, they are a common real estate practice. See *Kelly* v. *Marx, supra* at 829-830. The question before us is whether enforceability of a liquidated damages clause is to be tested by analyzing the circumstances at contract formation, the prospective or "single look" approach, or when the breach occurs, the retrospective or "second look" approach.

This question has created confusion in our courts, and originates from ambiguous language in the leading, most recent case of this court on liquidated damages in the context of the purchase and sale of real property, *A-Z Servicenter, Inc.* v. *Segall*, 334 Mass. 672, 675 (1956). Many decisions, following *A-Z Servicenter*, have concluded that liquidated damages should be measured, first, by assessing the reasonableness of the liquidated damages in light of the parties' ability to anticipate damages at contract formation, and, second, against the actual damages resulting from the breach. This was evident, most notably, in

[3]"[T]he judge should first determine whether the actual damages to the [sellers] are difficult to ascertain. If they are, in view of the reasonableness of the forecast of those damages, the liquidated damages provision should be enforced. If not, he should consider whether [the amount designated as liquidated damages] is so 'unreasonably and grossly disproportionate' to, or is 'unconscionably excessive' of, the actual damages caused by the breach so as to make the liquidated damages a penalty. Finally, if the judge determines that the liquidated damages provision is unenforceable, and that the [sellers'] losses exceed the difference between the contract price and the saleable value of the property at the time of breach, he should award to the defendants the amount of actual damages." *Kelly* v. *Marx*, 44 Mass. App. Ct. 825, 827 (1998), quoting *Shapiro* v. *Grinspoon*, 27 Mass. App. Ct. 596, 605 (1989).

the *Shapiro* case, on which the Appeals Court relied and which contained a three-step analysis based on the *Shapiro* court's interpretation of the *A-Z Servicenter* opinion. See *Shapiro* v. *Grinspoon, supra* at 605. See also *Colonial at Lynnfield, Inc.* v. *Sloan,* 870 F.2d 761, 765 (1st Cir. 1989) (applying *A-Z Servicenter* test); *Kelly* v. *Marx, supra* at 827-828 (same).[4]

We agree with the dissenting Justice, *id.* at 833 (Spina, J., dissenting), and the decisions of many other States,[5] that a judge, in determining the enforceability of a liquidated damages clause, should examine only the circumstances at contract formation. Our position is that "[w]here actual damages are difficult to ascertain and where the sum agreed upon by the parties at the time of the execution of the contract represents a reasonable estimate of the actual damages, such a contract will be enforced." *A-Z Servicenter, Inc.* v. *Segall, supra* at 675. Liquidated damages will not be enforced if the sum is "grossly disproportionate to a reasonable estimate of actual damages" made at the time of contract formation. *Lynch* v. *Andrew, supra* at 628.

This approach most accurately matches the expectations of the parties, who negotiated a liquidated damage amount that was fair to each side based on their unique concerns and circumstances surrounding the agreement, and their individual estimate of damages in event of a breach. We agree with the reasoning of the dissenting Justice, who pointed out that the " 'second look' reveals nothing that the parties had not

---

[4]The *Shapiro* court found support for its conclusion from the Restatement (Second) of Contracts § 356 comment b, illustration 4, at 159 (1981). The Appeals Court noted that the illustration demonstrates liquidated damages could be unenforceable if the nonbreaching party does not suffer a loss. See *Shapiro* v. *Grinspoon, supra* at 604. "Illustration 4 describes a situation in which a contractor's delay in constructing a race track grandstand caused no loss because the owner was not permitted to operate during the period of delay. It states: 'Since the actual loss to [the owner] is not difficult to prove, [the contractor's promise to pay $1,000 for each day of delay] is a term providing for a penalty and is unenforceable on grounds of public policy.' " *Kelly* v. *Marx, supra* at 828 n.6. We disagree with the Restatement's illustration. It contradicts the express language of § 356(1), which permits liquidated damages where the agreement is "reasonable in light of the anticipated *or* actual loss" (emphasis added). In the illustration, the liquidated damages were reasonable in light of the owners' anticipated or potential loss, and, therefore, should have been enforced.

[5]Courts are divided between the single and second look approach. See Appendix to *Kelly* v. *Marx, supra* at 832-833.

contemplated" when they entered their contract. *Kelly* v. *Marx,* *supra* at 833 (Spina, J., dissenting).

In addition to meeting the parties' expectations, the "single look" approach helps resolve disputes efficiently by making it unnecessary to wait until actual damages from a breach are proved. By reducing challenges to a liquidated damages clause, the "single look" approach eliminates uncertainty and tends to prevent costly future litigation. The "second look," by contrast, undermines the "peace of mind and certainty of result," *id.* at 833, the parties sought when they contracted for liquidated damages. It increases the potential for litigation by inviting the aggrieved party to attempt to show evidence of damage when the contract is breached, or, more accurately, evidence of damage flowing from the breach but occurring sometime afterward. In other words, "the 'parties must fully litigate (at great expense and delay) that which they sought not to litigate.'" *Watson* v. *Ingram*, 124 Wash. 2d 845, 851-852 (1994), quoting Note, "Keep the Change!": A Critique of the No Actual Injury Defense to Liquidated Damages, 65 Wash. L. Rev. 977, 991 (1990).

The plaintiffs argue that application of a "second look" approach would allow the court to guard against undue windfalls, such as the one the defendants would receive here if they were to keep the deposit, because the defendants suffered no loss from the breach of the sale. We disagree. In essence, the plaintiffs want to undo the agreement between the parties, who expect to receive stipulated damages, not damages resolved by a court examining postbreach circumstances. The parties agreed to the extent of their damages when they agreed on a liquidated damages clause. "[T]he proper course is to enforce contracts according to their plain meaning and not to undertake to be wiser than the parties, and therefore that in general when parties say that a sum is payable as liquidated damages they will be taken to mean what they say and will be held to their word." *Guerin* v. *Stacy*, 175 Mass. 595, 597 (1900) (Holmes, C.J.).

Turning to the present case, we conclude the plaintiffs are not entitled to the return of the deposit they paid to the defendants. The potential damages were difficult to predict when the agreement was made. As another court has correctly noted: "[T]he parties could not know what delays might ensue, what might occur in the real estate market, or how a failed sale might affect [the seller's] plans. Real estate purchase and sale agreements

are precisely the type of contracts that are amenable to liquidated damages provision." *Watson* v. *Ingram, supra* at 855.

Viewing the facts at the time of contract formation, the liquidated damages were a reasonable estimate of the damage to the defendants. The deposit, five per cent of the purchase price, was a reasonable forecast of the defendants' losses that would result if the buyers were to breach the agreement. These costs could arise from a host of issues relating to finding another buyer and waiting for an uncertain period of time before selling their property, and in light of the risk of an undeterminable loss that is dependant on many factors (primarily the shape of the real estate market at the time of the breach). The sum is not grossly disproportionate to the expected damages arising from a breach of the sale agreement, nor is it "unconscionably excessive" so as to be defeated as a matter of public policy. See *A-Z Servicenter, Inc.* v. *Segall, supra* at 675. Cf. *Security Safety Corp.* v. *Kuznicki*, 350 Mass. 157 (1966) (liquidated damages providing for penalty of one-third of contract price unreasonable and unenforceable as a matter of law).[6] As the Appeals Court conceded, "Were our inquiry limited to the circumstances obtaining at the time the parties entered into their agreement, we would permit the sellers to retain the deposit, amounting to five percent of the purchase price." *Kelly* v. *Marx, supra* at 829.

*Judgment of the Superior Court affirmed.*

---

[6]We reiterate our view that "[a] term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." Restatement (Second) of Contracts, *supra* at § 356(1), at 157.

## NOTE.

The next page is purposely numbered 1001. The intervening page numbers were intentionally omitted in order to make it possible to publish this material with *permanent* page numbers, thus making official citations available upon publication of the preliminary prints of these Reports.