Botsford, J.
This action arises out of a purchase and sale agreement for eighteen house lots located in Westborough, Massachusetts. The buyer-defendant Barberry Homes, Inc. (“Barberry Homes”) admits that it breached the purchase and sale agreement when it failed to close on the second set of lots. The seller-plaintiff Gerald R. Carroll, Trustee of Gable Ridge Nominee Trust (“Gable Ridge”), who retained Barberry Homes’ $50,000 deposit as liquidated damages, seeks monies over and above the $50,000 for Barberry Homes’ breach of contract (Count I),[2] misrepresentation (Count II), detrimental reliance (Count III), unjust enrichment (Count IV), and unfair and deceptive practices in violation of G.L.c. 93A (Count V).
Barberry Homes now moves for summary judgment as to Count I on the grounds that the purchase and sale agreement’s liquidated damages clause limits Gable Ridge’s recoverable damages to the $50,000 retained by Gable Ridge, and as to Counts II through V on the grounds that on the undisputed facts in this case, Barberry Homes is entitled to judgment as a matter of law. For the reasons stated below, Barberry Homes’ motion for summary judgment is ALLOWED.
BACKGROUND
On September 4, 1996, Gable Ridge and Barberry Homes entered into a purchase and sale agreement (“the agreement”) concerning the sale of eighteen undeveloped house lots located in Westborough, Massachusetts. Under the agreement, Barberry Homes would purchase the lots from Gable Ridge in three phases, with closing dates on October 21, 1996, June 1, 1997, and October 15, 1997. Six lots were to change hands at the first closing, three at the second, and nine at the third. The total purchase price for the lots was $2,700,000, or $150,000 per lot.
The agreement addressed Gable Fudge’s remedy in the event of Barberry Homes’ breach. The relevant portion, captioned BUYER’S DEFAULT: DAMAGES, states: “If the BUYER shall fail to fulfill the BUYER’S agreements herein, all deposits made hereunder by *669 the BUYER shall be retained by the SELLER as liquidated damages and this shall be the SELLER’S sole remedy at law and equity.”
The agreement’s Rider A repeats the deposit forfeiture provision. Rider A states that if Barberry Homes fails to close on schedule, Gable Ridge may consider Barberry Homes in default, and the agreement “null and void and of no further force and effect” in which case “the deposit shall become the property of seller, all in accordance with the terms and provisions of the Agreement.”
Before the first closing date, the parties executed an amendment (“the amendment”) to the agreement. In the amendment, the parties agreed that Barberry Homes would pay $50,000 less than the previously agreed to price for one of the six lots (Lot 16) set to change hands on the first closing date. The amendment, however, did not lower the total purchase price. Rather, the $50,000 was to be reallocated over the remaining 17 lots being sold, so that the individual lot price for the remaining lots would become $152,942, rather than $150,000. The amendment repeats Rider A’s default provision and states that, except for the new terms concerning Lot 16, “(t]he aforementioned Purchase and Sale Agreement remains in full force and effect.”
On October 21, 1996 the parties closed on the first six lots. Barberry Homes paid $100,000 for one lot (Lot 16) and $152,941 for each of the five other lots, as provided for in the amendment. The total paid was therefore $864,705. In February 1997, Peter Gallipeau (Gallipeau), president of Barberry Homes and signatory to the agreement and the amendment, resigned his position. In March 1997, David Carter (Carter) succeeded Gallop as president of Barberry Homes. On June 1, 1997, the second scheduled closing date under the agreement, Barberry Homes failed to close on the next set of lots. The record indicates that Carter decided not to close on the remaining lots because Gable Ridge would not change the sequences in which the remaining lots were to be purchased.
Gable Ridge thereafter took possession of Barberry Homes’ $50,000 deposit. Barberry Homes does not dispute Gable Ridge’s right to the deposit.
DISCUSSION
The court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). Accord Massachusetts Bay Transp. Authy. v. Allianz Ins. Corp., 413 Mass. 473, 476 (1992). The moving party bears the burden of demonstrating affirmatively that there is no genuine dispute of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Where the party opposing summary judgment carries the burden of proof at trial, and the moving party demonstrates that the opposing party has no reasonable expectation of establishing an essential element of his case, summary judgment is appropriate unless the party opposing the motion sets forth specific facts showing a genuine issue for trial. Kourouvacilis v. General Motor Corp., 410 Mass. 706, 716 (1991).
I. Breach of Contract
The parties’ dispute centers on the meaning of the liquidated damages clause of the agreement, as amended. It is well settled under Massachusetts law that contract interpretation is generally a question of law. Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992). See Edmonds v. United States, 642 F.2d 877, 881 (1st Cir. 1981). Where the wording of a contract is unambiguous, the contract must be enforced according to its terms. Freelander v. G.&K. Reality Corp., 357 Mass. 512, 516 (1970). An ambiguous contract, however, may raise a question of fact for a jury, Trafton v. Custeau, 338 Mass. 305, 307-08 (1959). See also, Gillentine v. McKeand, 426 F.2d 717, 712 (1st Cir. 1970). However, the determination whether a contract is ambiguous is a question of law. Allen v. Adage, Inc., 967 F.2d 695, 698 (1st Cir. 1992). In interpreting a contract, the court must give effect to the parties’ intentions and construe the language to give it reasonable meaning wherever possible. Shea v. Bay State Gas Co., 383 Mass. 218, 224 (1981). A contract must also be interpreted as a whole and effect must be given to all of its parts in order to effectuate its overall purpose. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 795 (1986).
There is no dispute that Barberry Homes breached the contract by not going forward with the second and third sets of lot purchases. Thus, Gable Ridge properly retained Barberry Homes’ $50,000 deposit as liquidated damages. Liquidated damage clauses which provide for the seller of real estate to retain the deposit of a breaching buyer are recognized in Massachusetts. Kelly v. Marx, 428 Mass. 877, 879 (1999), quoting Lynch v. Andrew, 20 Mass.App.Ct. 623, 627 (1985). Where actual damages are difficult to ascertain and where the sum agreed upon by the parties represents a reasonable estimate of the actual damages, a liquidated damages provision will be enforced. Id.
Neither parly challenges the reasonableness of the liquidated damages clause in the agreement.[3] Accordingly, I conclude that the subject liquidated damages clause is enforceable as a matter of law. The question remains whether or not the liquidated damages clause is Gable Ridge’s exclusive remedy against Barberry Homes.
A liquidated damages clause does not preclude other remedies available at law or equity absent the clear intention of the parties to the contrary. North Am. Consol., Inc. v. Kopka, 644 F.Sup. 191, 193 (D.Mass. 1986). See also De Blois v. Boylston & Tremont Corp., 281 Mass. 498, 518 (1933). A court will permit recov *670 ery under alternative remedies where the intention of the parties, as expressed through the terms of the contract, liquidates some, but not all, of the damages. Id.
Here, the liquidated damage clause language is unambiguous and susceptible to only one meaning, namely, that in the event of the buyer’s breach, the parties agree to limit seller’s recovery to the $50,000 deposit.[4] The agreement is explicit that, in the event of buyer’s breach, the deposit will be retained by seller, and be its “sole remedy at law and equity.” The agreement’s Rider A repeats the deposit forfeiture provision. More importantly the amendment, the expression of the parties’ understanding of the renegotiated payment schedule, leaves the agreement’s liquidated damage provision unchanged; “(e]xcept as modified herein, the aforementioned Purchase and Sale Agreement remains in full force and effect.” I agree that “[t]he proper course is to enforce contracts according to their plain meaning and not to undertake to be wiser than the parties, and therefore that in general when the parties say that a sum is payable as liquidated damages they will be taken to mean what they say and be held to their word.” Kelly, 428 Mass. at 881, citing Guerin v. Stacy, 175 Mass. 595, 597 (1900) (Holmes, C.J.).
Accordingly, the liquidated damages clause is the sole remedy available to Gable Ridge for Barberry Homes’ breach of contract. As a matter of law, Gable Ridge has no basis to receive additional damages for this breach.
II. Misrepresentation
Gable Ridge claims that Barberry Homes misrepresented its intentions when amending the purchase and sale agreement. Specifically, Gable Ridge alleges that at the point Barberry Homes asked it to reduce the price on Lot 16 by $50,000 and spread that amount over the seventeen remaining lots, it knew it had no intention of purchasing more than the six lots which closed on October 21, 1996.
To recover for misrepresentation, a plaintiff must establish that: (1) the defendant or its agent made a false representation; (2) the representation concerned a material matter; (3) the representation was one of fact, not one of expectation or opinion; (4) the representation was made with the intent that it would be acted on, and; (5) damages resulted directly therefrom. Zimmerman v. Kent, 31 Mass.App.Ct. 72, 78-80 (1991).
To prevail on this claim, Gable Ridge must establish that Gallipeau signed the amendment knowing that he would not close on the remaining lots. Powell v. Rasmussen, 355 Mass. 117, 118 (1969) (misrepresentation must be of a factual matter known to the defendant, not a matter of opinion, estimate or judgment).
The assertion that Gallipeau misrepresented his intent to purchase the remaining lots is unsupported by the summary judgment record. Gallipeau, Barberry Homes president at the time, negotiated the agreement and amendment. Gallipeau’s affidavit states that he intended to complete the purchase of all eighteen lots. The breach occurred four months after Gallipeau left Barberry Homes and was replaced by Carter. There is no evidence that indicates, or even begins to suggest, that Gallipeau’s intention was not as he stated. The fact that Carter followed a different course months later offers no support for a finding that, from the outset, Barberry Homes did not intend to complete the full purchase.
While summary judgment is inappropriate where intent is in genuine dispute, Schroeder v. Lawrence, 372 Mass. 1, 5 (1977), it is proper in this case. The party opposing a summary judgment motion may not rest on assertions or denials in the pleadings, but must respond with affidavits or other evidence to establish the existence of a genuine issue of material fact for trial. LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Gable Ridge’s claim, in essence, is merely an assertion.
Accordingly, Barberry Homes is entitled to summary judgment on Gable Ridge’s misrepresentation claim.
III. Detrimental Reliance
Gable Ridge asserts that it relied on Barberry Homes’s promise to pay the $50,000 offset on Lot 16 through an increased purchase on the remaining seventeen lots, and that its reliance on that promise was to its detriment, since Barberry Homes did not purchase the remaining lots. This claim cannot succeed in the present case.
Reliance on an otherwise unenforceable promise, one that would fail under traditional contract theory for lack of consideration, may give rise to a cause of action for detrimental reliance. Loranger Construction Corp. v. E. F. Hauserman Co., 376 Mass. 757, 760-61 (1978). Accord Rhode Island Hosp. Trust Nat’l Bank v. Varadian, 419 Mass. 841, 849 (1995) (“an action based on reliance is equivalent to a contract action, and the party bringing such an action must prove all necessary elements of a contract other than consideration”).
Gable Ridge and Barberry Homes exchanged more than promises. They had a traditional contract: a meeting of the minds containing an offer, acceptance and, most significantly for this discussion, consideration. Under the written agreement, and written amendment, the parties agreed that Gable Ridge would transfer title to the eighteen lots in exchange for a significant amount of money to be paid by Barberry Homes. The parties also agreed, in the same consideration-supported writing, that on default of Barberry Homes, Gable Ridge would be entitled to the full deposit. In the circumstances, given the valid contracts between the parties, which are fully supported *671 by consideration, Gable Ridge’s theory of detrimental reliance cannot succeed. Accordingly, Barberry Homes is entitled to summary judgment on Count III.
IV. Unjust Enrichment
Gable Ridge asserts that Barberry Homes was unjustly enriched by paying less than $150,000 for Lot 16. Unjust enrichment is defined as “retention of money or property of another against the fundamental principles of justice or equity and good conscience.” Taylor Woodrow Blitman, Etc. v. Southfield, Etc., 534 F.Sup. 340, 347 (1982). This equitable remedy is not available to a party with an adequate remedy at law. Mass. Cash Register, Inc. v. Comtrex Systems Corp., 901 F.Sup. 403 p. 945 (D.Mass. 1995).
Because it has an adequate remedy at law — liquidated damages available under the contract — Gable Ridge cannot recover under this equitable theory. To hold otherwise would be to allow Gable Ridge to bargain for an exclusive remedy, and then complain that the remedy selected is inadequate. Certainly, Barberry Homes’ breach was a foreseeable possibility. Gable Ridge was in a position to protect itself by drafting the amendment in a way to avoid the situation of which it now complains. It chose not to. Equity does not require this court to ignore the plain language of the parties’ agreement: retention of the $50,000 deposit would be “the Seller’s sole remedy at law and equity.” The better course of action is “not to undertake to be wiser than the parties,” Kelly v. Marx, supra, 428 Mass. at 881, and therefore to limit Gable Ridge’s recovery in accordance with the liquidated damages clause. Accordingly, summary judgment on Count IV is appropriate.
V. Violation of G.L.c. 93A
Gable Ridge asserts that Barberry Homes’ conduct is unfair or deceptive within the meaning and scope of G.L. 93A, §§2 and 11. Barberry Homes responds that its actions lacked the unethical, immoral, oppressive and unscrupulous elements required to subject a breaching party to a c. 93A claim. The undisputed facts contained in the summary judgment record demonstrates that this is a simple case of breach of contract, and nothing more. Such a breach, on its own, does not amount to an unfair act or practice under c. 93A. Madan v. Royal Indem. Co., 26 Mass.App.Ct. 756, 763, review denied, 404 Mass. 1103 (1989). Accord, Makino, U.S.A., Inc. v. Metlife Capital Credit Corp., 25 Mass.App.Ct. 302, 310, review denied, 402 Mass. 1107 (1987) (a “concerted course of deception” related to breach of purchase and sale agreement required for 93A claim). Accordingly, Barberry Homes is entitled to summary judgment on Gable Ridge’s c. 93A claim.
Order
For the foregoing reasons, Barberry Home’s motion for summary judgment is ALLOWED.

 Barberry Homes admits to Count I.

 The summary judgment record contains no specific evidence of damages beyond the “unpaid" portion of the original purchase price assigned to Lot 16, which comes to $35,295.

 The amendment, whether it reflects a reduced price of Lot 16 (as Barberry Homes claims), or allows for deferred payments for Lot 16 (as Gable Ridge claims), did not alter the liquidated damages clause of the original agreement.