KARL BREUING & another[1] *vs.* DORIS CALLAHAN.

No. 98-P-1851.

Norfolk. May 4, 2000. - November 1, 2000.

Present: BROWN, PERRETTA, & GREENBERG, JJ.

*Contract,* Performance and breach, Sale of real estate. *Real Property,* Sale, Purchase and sale agreement.

In an action brought by prospective buyers of real estate for breach of the purchase and sale agreement and seeking return of their deposit, the judge erred in granting summary judgment in favor of the sellers, where disputed issues of material fact remained with respect to whether the sellers had so altered the landscape of the property to bring the lot into conformance with septic system requirements that the buyers were entitled under the agreement to be excused from performance. [362-363]

CIVIL ACTION commenced in the Superior Court Department on July 24, 1996.

The case was heard by *Elizabeth Butler,* J., on motions for summary judgment.

*James A. Goodhue* for the plaintiffs.

*Charles G. Devine, Jr.,* for the defendant.

BROWN, J. On April 10, 1996, the plaintiffs, Karl Breuing and Heidi Kummer (buyers), executed a purchase and sale agreement to purchase the Dover property of the defendants, Edgar and Doris Callahan (sellers),[2] for $685,000. The plaintiffs delivered a deposit of $68,500.00 to the listing broker as required by the agreement. The date of performance prescribed by the agreement was May 14, 1996.

We examine only those materials properly before the judge who considered the parties' cross motions for summary judgment. Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). See

---

[1]Heidi B. Kummer.

[2]The property was owned as tenants by the entirety by Edgar and Doris Callahan. A suggestion of death of Edgar Callahan was filed.

*O'Sullivan* v. *Shaw*, 431 Mass. 201, 203 (2000). Under the terms of the agreement, the sellers were required to deliver a Title V compliance certificate for the septic system at the closing.[3] The agreement also provided that the sellers were to deliver the premises "in the same condition as they now are, reasonable use and wear and tear excepted," and in the event that the sellers could not deliver possession, convey title, or render the premises in conformity with the agreement, "the time for performance hereof *shall be extended* for a period of thirty or fewer days" (emphasis added).[4] In the event of the buyers' default, the sole remedy available to the sellers under the agreement was the deposit given by the buyer.[5]

On April 23, 1996, a report was issued pursuant to an earlier inspection of the septic system revealing that the system had failed inspection. The buyers received notice of the failure on April 26, 1996, and, according to their affidavit, decided not to proceed with the purchase because of "friends' previous bad experiences with such arrangements." The sellers invoked their right under paragraph 10, see note 4 *supra*, of the agreement to extend the closing date so as to make the premises conform with a new septic system. The sellers submitted proposed plans for constructing a new septic system. After reviewing the new septic system plans, the buyers, according to their affidavit, again balked, because "it was clear that the property would be substantially altered from the condition in which we agreed to purchase it. The left side of the house was the only feasible area for a fenced dog area, which due to the leaching fields in that area was no longer possible. Furthermore, trees which provided shade for the proposed dog area and privacy from the neighbor-

---

[3]Paragraph 11 of the rider to the purchase and sale agreement states as follows: "The SELLER shall deliver a Title V certification at the closing. This paragraph shall survive the delivery of the deed."

[4]Paragraph 10 of the purchase and sale agreement states, in part, as follows: "If the SELLER shall be unable to give title or to make conveyance, or to deliver possession . . . or if at the time of the delivery of the deed, the premises do not conform with the provisions hereof, then the SELLER shall use reasonable efforts to remove any defects . . . in which event the time for performance hereof shall be extended for a period of thirty or fewer days."

[5]Paragraph 21 of the purchase and sale agreement states, in part, as follows: "If the BUYER shall not fulfill the BUYER'S agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages and this shall be the SELLER's sole remedy at law or equity for the BUYER'S default."

ing lot were to be removed, and thus change the feel and aesthetics of the property."

On May 13, 1996, the day before the original closing date, the buyers through their attorney demanded in writing the return of their deposit because they disapproved of the plans for the installation of the new septic system. Specifically, their attorney stated that the plan, "drastically changes what they agreed to buy, namely your land which has a unique beauty to it . . . [and that] it is a very large system which will mean a significant change in the landscape." In response, on May 14, 1996, the sellers refused to return the deposit and notified the plaintiffs' attorney of their right under the contract to an additional thirty days to cure.

During those thirty days, the sellers began construction on a new septic system. On May 31, 1996, the sellers sent a letter to the buyers, emphasizing that if they did not purchase the property at the new closing date of June 13, 1996, their deposit would be forfeited. In the interim, the buyers, consistent with their previously expressed lack of desire to consummate the transaction, put a deposit on another property on May 26, 1996, without the sellers' knowledge.[6]

The sellers began work on the new septic system and on June 12, 1996, one day prior to the extended closing date, the sellers sent a letter to the buyers confirming the closing. In response, the buyers' attorney sent a letter indicating that his clients were not purchasing the property as per his communication of May 13, 1996. On June 13, 1996, the sellers were ready to close with a deed and Title V certificate, but the buyers did not appear for the closing. The buyers demanded their deposit be returned, claiming that the condition of the premises at the time of the extended closing did not conform to the agreement.[7] On July 24, 1996, the buyers brought suit to recover the deposit, alleging breach of contract. The sellers counterclaimed for breach of the contract (other counterclaims, unsuccessful below, are not

---

[6]They subsequently executed a purchase and sale agreement on the new property on June 1, 1996.

[7]In their affidavit, the buyers stated as follows: "At the time of the scheduled closing, the [sellers] did not have a Title 5 certificate in hand, *nor plans for a new septic system that would leave the property we had agreed to purchase unaltered and intact.* We thus felt that we were being pressured into going ahead with the purchase of something other than we had agreed to buy, and decided that we did not wish to purchase the Premises under the circumstances."

at issue). On cross-motions for summary judgment, a Superior Court judge denied the buyers' motion and allowed the sellers' motion as to liability only, ruling that the buyers and not the sellers were in breach of the agreement. A second Superior Court judge granted summary judgment as to damages, ruling only that the sellers had established that their out of pocket expenses exceeded the amount of the deposit.[8] This appeal ensued.

1. *Breach of the agreement.* The buyers contend that the trial judge erred in granting summary judgment in favor of the sellers because it was the sellers who were in breach (or alternatively, the property had changed in material respects so that there was no longer a meeting of the minds). The essential thrust of the buyers' argument is that, even assuming that the sellers had a right under the purchase and sale agreement to attempt to cure the defective septic system (as appears plain they did), the sellers in so doing materially altered or substantially changed the condition of the property which they had expressly agreed not to do. Stated differently, the sellers agreed to deliver the premises "in the same condition as they now are, reasonable use and wear thereof excepted."

We do not understand the buyers to be asserting that the sellers had no right to attempt to cure the problem of the septic system and, indeed, the contract on its face demonstrates the clear intention of the parties to extend the closing date thirty days in the event the sellers were unable to convey clear title or premises that conform to the provisions of the agreement, anticipating a contingency such as the failed septic system.

The buyers argue, however, that even if the sellers had an opportunity to cure, the sellers were unable to do so, thereby excusing performance on the part of the buyers. See *Hastings Assocs., Inc.* v. *Local 369 Bldg. Fund, Inc.,* 42 Mass. App. Ct. 162, 171 (1997). They maintain that this is so because, in curing the problem of the failed septic system, the sellers materially altered the real estate. The record reveals that the buyers consistently communicated that their reasons for declining to

---

[8]The judge's ruling, employing the "second look" approach respecting the liquidated damages provision in the contract, was issued prior to *Kelly* v. *Marx,* 428 Mass. 877, 878-881 (1999), which rejected that approach.

close the deal were the changes in the property — in particular, the "significant change in the landscape."[9]

We agree with the buyers' contention that they have identified a genuine issue of material fact rendering summary judgment inappropriate. "[R]eal property is unique." *Greenfield Country Estates Tenants Assn., Inc.* v. *Deep*, 423 Mass. 81, 88 (1996). It is a question of fact whether the buyers had a right to reject the deal because the landscape of the property had been altered by the installation of the new septic system. Compare *Hastings Assocs., Inc.* v. *Local 369 Bldg. Fund, Inc.*, 42 Mass. App. Ct. at 171. If the fact finder were to conclude that the landscape had been significantly changed or the property otherwise materially altered, then the buyers would have justifiably declined to go through with the sale and thus would be entitled to get their deposit back. The task of the fact finder on remand is to determine whether the installation of the new septic system as planned or built in a material way altered the appearance or utility of the property from its state at the time the purchase and sale agreement was made.

2. *Damages.* Deciding as we do, we need not reach the issue of damages.[10] At this juncture, we merely need to say that, if the buyers are found to have committed a breach after a decision on the merits as to liability, any resultant damages are to be computed in accordance with the teaching of *Kelly* v. *Marx*, 428 Mass. 877, 878-882 (1999).

The judgment for the sellers is vacated, and the case is

---

[9]In their affidavit, the buyers note that on the extended closing date of June 13, they "viewed the Premises and saw that several trees had been removed, and furthermore, that substantial construction and excavation with heavy equipment was ongoing on the Premises."

[10]In support of the sellers' supplemental motion for summary judgment on the issue of damages, they provided the court with authenticated facts that their damages constituted (1) $55,000 difference in the contract price and the actual purchase price paid by another buyer; (2) $37,236.27 in mortgage interest, $4,306 in real estate taxes, $1,089.44 in insurance premiums, and $2,378.79 for oil and electricity in carrying the property for thirteen months; (3) $20,894.90 to expedite the septic system repairs to meet the extended closing date; and (4) $17,804.96 in legal fees.

In passing, we note that not all of the out-of-pocket costs may be attributable to the buyers' alleged default. For example, the sellers seem to be claiming as out of pocket the additional cost of expediting the septic system repair, but they would have had to pay for this work in any event.

remanded to the Superior Court for further proceedings in light of this opinion.

*So ordered.*