Fecteau, J.
This is an action of interpleader brought by the plaintiff as an escrow agent that seeks the disposition of funds paid to him to be held as a deposit by the defendants Ferrecchia, as the intended buyers, to the defendant Anderson, as intended seller, in connection with an unconsummated real estate transaction. The plaintiff was granted leave to deposit the funds, in the amount of $5000.00, with the Clerk of Court, which he has done.
The matter originally came on for a hearing on March 7, 2001, in connection with the motion of the plaintiff for assessment of fees and costs alleged by him to have been incurred in connection with his services as escrow agent and for which there is alleged to be support in the purchase and sale agreement signed by the other parties herein. In connection with that hearing, this court determined that, in the interest of justice and judicial economy, and without objection from any party, an accelerated trial on all the issues then existing among the parties to the action was warranted. Therefore, the matter came on for trial before me, sitting without jury, on April 2, 2001. Upon consideration of the evidence, I make the following findings of fact and rulings of law.
On or about December 4, 1998, Darryl S. Anderson agreed to sell and Kathy Falcon and Adam Ferrecchia agreed to buy real estate located 3 Turner Avenue, Worcester, for the amount of $99,000.00, with each signing a purchase and sale agreement to that effect. The agreement called for a closing date of January 22, 1999, and with “time being of the essence.” The agreement also contained a mortgage contingency clause wherein the buyers agreed to make diligent efforts to obtain FHA financing for up to $96,000.00, and, should the buyers fail to obtain such financing despite their diligent efforts and so long as they notified the seller to that effect in writing by January 4, 1999, their deposit of $5000.00, paid upon the execution of the purchase and sale agreement, would be refunded forthwith. A default of timely notice would constitute a waiver of the contingency (Ex. 1, ¶21), and, should the transaction not be consummated, they would forfeit the deposit as it would constitute the seller’s liquidated damages. (Ex. 1, ¶19.)
I find that the deposit paid in the amount of $5000.00, represents almost exactly 5% of the purchased price agreed upon. Given the uncertainty of measuring actual damages anticipated from the date of the contract, given market conditions and the length of time that a property might have to be carried, this deposit is reasonable in amount and as expressed as a percentage of sales price; additionally, it conforms with standard practice. Ultimately, it was shown to be proportionate to the seller’s actual damages.
The buyers did not obtain the financing which they had sought. They failed to notify the seller in writing by January 4, 1999 of that situation. The failure to give written notice by January 4, 1999 constitutes a waiver of the mortgage contingency clause and the closing was required to take place unless waived or extended. The closing intended to take place on January 22, 1999 neither occurred nor was it extended in writing. This constitutes a breach of contract and a default of the deposit. There was evidence that the seller was notified on the day prior to the intended closing that the buyers would not be taking title. No reason was expressed at that time. There also was evidence to the effect that the buyers were continuing to work out whatever difficulties they were experiencing in connection with obtaining financing for the purchase but such efforts do not negate the breach nor did the seller waive his rights under the agreement to insist on compliance with its terms.
Ultimately, the buyers were unable to proceed and requested the return of their deposit. The seller, acting through his attorney, the plaintiff herein, declined to do so, citing the waiver of the contingency clause that their failure to timely notify constituted, per paragraph *234 21 of the agreement and the damages for buyer’s default. See also ¶ 19 of the agreement.
The defendant Anderson was able to sell his property to another party on April 15, 1999. He testified that during the period from the failed closing date of January 22, 1999 to the sale in April, he incurred expenses to carry the property that he otherwise would not have incurred had the defendants Ferrecchia followed through with their contract. He first had to move out of the property in advance of the closing. He lists additional mortgage payments of $630.00 per month for a total of $1890.00, real estate taxes of approximately $500.00 for that period of time, plus the costs of heating, maintenance, insurance and repairs to the plumbing system that he asserts he would not have had to make, all of which he says justifies his retention of the deposit as liquidated damages for the buyers’ failure to go through with the transaction. I find that the deposit was a reasonable forecast of the seller’s damages and bear a direct causal relationship to the failed transaction, as the costs alleged by the seller to have been incurred by him in carrying the property until he was able to sell to another would likely not have had to be borne by him had the Ferrecchias consummated the transaction in January.
Such agreements, if reasonable, are enforceable in Massachusetts. Kelly v. Marx, 428 Mass. 877 (1999). I find that under the circumstances herein, the deposit bearing a reasonable relationship to likely damages to be suffered by a seller in the position of Darryl Anderson, it is reasonable to enforce the contract provision that calls for a default of the deposit due to the buyers’ breach; the balance of the deposit, after the costs of escrow are taken, shall be awarded to the defendant Darryl Anderson.
Turning next to the plaintiffs motion for the asssessment of attorney fees and costs, the seller’s attorney, the plaintiff herein, acted as escrow agent for purposes of holding the deposit. His rights and responsibilities are set forth in ¶ 18 of the agreement. In the event of disagreement between the parties, the escrow agent was to retain the deposit and to await instructions as agreed upon by the parties or by a court of competent jurisdiction. The escrow agent is entitled, per the agreement, to be reimbursed “for legal fees and costs incurred solely relating to activities as escrow agent.” He and his attorney have filed affidavits which have been received into evidence.[1] The plaintiff Kotseas, himself an attorney with considerable experience in connection with real estate transactions, has asserted out-of-pocket expenses consisting of the filing fee and costs of service in the amount of $258.00 and afee for 3V2 hours of his time at a rate of $150.00 per hour, for a total fee of $525.00, totalling $783.00. His attorney has also filed an affidavit in which he asserts a legal fee totaling the amount of $1,017.50, at an hourly rate of $ 185.00 for the 5 Vi hours of legal services provided to Kotseas.
Although the defendants do not challenge the assertions by the plaintiff and his attorney that the services were provided and do not challenge the amount of time spent, they do contend that these charges are at an excessive rate. In addition, the defendants Ferrecchia challenge the right of Kotseas to retain counsel at their expense.
The agreement states that Kotseas, as escrow agent, may be reimbursed “for legal fees and costs incurred solely relating to activities as escrow agent ...” First, it is a matter of court record that costs of suit were so incurred. Second, the three and one-half hours of time spent by Kotseas, although not itemized, does not seem disproportionate to the efforts likely made to resolve the matter, one way or another. Lastly, regarding his hourly rate of $ 150.00, although it is not an unreasonable rate for an attorney to charge, he was acting during the period of time both as the attorney for the seller and as escrow agent. Although the office of attorney brings a duty of competence, loyalty and fidelity to his client by virtue of his office and his license to practice law, it is not an element required of escrow agents and, oftentimes, deposits are retained by real estate agents pending a sale. However, the agreement does not state that the escrow agent may assess a fee for his time, unless he is the person providing the legal services. In this case, I find that Attorney Kotseas seeks to be paid for services as an escrow agent and not for services as an attorney. The word “costs” do not, in my view, reasonably convey the meaning of a charge or fee for services being provided by the person in the position of the escrow agent viewed in the context of this case and this clause. Since the agreement was drafted by the plaintiff herein, and if the word “costs” was intended by him to include a fee for his services, it either plainly does not include such a charge within its customarily understood meaning, or it is ambiguous; if it is ambiguous, such ambiguity must be resolved against the person who created the ambiguity, namely, the plaintiff. Consequently, his claim for services as an escrow agent is denied.
Turning, then, to the legal fee asserted by the plaintiff as being incurred by his retention of counsel, the defendants contend that the agreement does not include any support for Kotseas having retained counsel and to assess those fees to them. The agreement does permit such costs and fees to be assessed, however. A common-sense reading of the agreement, giving the words their plain and commonly understood meaning leads to an interpretation that permits an escrow agent in the position of the plaintiff herein the right to hire counsel and assess the defendants for his fees. To interpret the agreement as to foreclose the plaintiffs right to retain counsel and pass those fees onto the parties, as the defendants suggest should be the interpretation, and carrying their argument to its logical extreme would lead to one of two possible conclusions: either that the plaintiff would be entitled *235 to charge the parties for his services as an attorney, or that he should personally absorb legal fees on a matter in which he has no real interest, as opposed to the true parties in interest, namely the defendants. The fact that the hourly rate is not expressed in the agreement is not relevant to the issue of whether he had the right to incur and assess reasonable charges to the defendants, on whose behalf he held their funds and for which he incurred these costs, since the parties themselves could not agree as to their disposition and the agreement not providing any other mechanism for resolution short of trial in court were the parties not to agree as to their disposition.
In examination of the charges asserted by plaintiffs counsel, the five and one-half hours of time spent to meet and confer with his client, to prepare the suit papers, attend to their filing in court, and to bring the matter towards trial or resolution is not unreasonable per se, nor is his hourly rate of $ 185.00, given his years of experience and competence level. However, the level of complexity that this case presents does not, in my view, require the experience or degree of competence possessed by plaintiff s counsel. In my view, a more reasonable hourly rate to assess under the circumstances of this case is $125.00. We must keep in mind that with respect to this interpleader, the fees and costs are being assessed in connection with the escrow activities only and not in connection with representation of any or all of the defendants, including Kotseas’ client, Anderson. Were the court to be asked to assess reasonable costs and fees associated with the representation of Anderson in connection with a suit concerning the disposition of the deposit, the court would, in all likelihood, grant the higher rate. However, since the deposit held in escrow was- conceivably to become funds belonging to the plaintiffs client, and although the rules of professional responsibility do not require hourly-rate fee agreements to be in writing, and that it was Kotseas and not Anderson who retained counsel in this matter, it is not unreasonable to expect and to require that a client in these circumstances (Anderson) be informed as to the hourly rate he may be charged for services related to the work for which an attorney is retained. Since the agreement is silent as to an hourly rate, and Anderson never agreed to a particular rate for legal services that Kotseas may require, the court seeks to do what is reasonable under the circumstances.[2] Consequently, the plaintiffs motion to assess fees and costs shall be allowed as follows:
(1) court costs for filing fee and costs of service in the amount of $255.00;
(2) legal fee in the amount of $687.50.
As between the defendants, for the foregoing reasons, the remainder of the deposit, in the amount of $4,057.50 is awarded to Darryl Anderson as liquidated damages pursuant to paragraph 19 of the purchase and sale agreement for the breach by the defendants Kathy Falcon Ferrecchia and Adam Ferrechia.
ORDER FOR JUDGMENT
For the foregoing reasons, a judgment in inter-pleader shall enter in favor of the defendant Darryl S. Anderson, in part, and in favor of the plaintiff, in part. From the funds deposited by the plaintiff with the Clerk of Court, the defendant Anderson is awarded the sum of four thousand fifty-seven dollars and fifty cents ($4,057.50). The plaintiff is awarded the sum of nine hundred forty-two dollars and fifty cents ($942.50). As the escrow fund was to be held in a non-interest bearing account, the plaintiff is not entitled to any interest and the defendant Anderson is to be awarded any interest earned while the funds have been on deposit with the Clerk of Court. Moreover, since the award to the plaintiff includes his costs of this action, no costs are to be further awarded to any party.

 Originally filed in support of the plaintiffs motion for assessment of fees and costs, the court, during trial, suggested to the parties that the content of the affidavits be received in the nature of plaintiffs direct testimony and the plaintiff be available for cross-examination, to which the parties agreed.

 The court also is mindful of the usual optimism attendant upon real estate transactions proceeding somewhat smoothly and that the parties are generally not looking ahead to those events that may occur should matters take a different turn. However, given the clause in this agreement, potential legal fees that may be incurred in this context is a matter that should be discussed with one’s client if only to provide some information of services reasonably necessary and some information upon which a basis to estimate fees, such as a likely hourly rate or rate ceiling and agreement reached.