Fremont-Smith, Thayer, J.
In this case, the following facts are not disputed. In March 2004, defendant Ashby C. Moncure (“Moncure”) retained NRT New England, Inc. (“Coldwell Banker”) to be his broker for the sale of his real estate. Plaintiff Plain Road Co. (“Plain Road”) offered to purchase the property for $1,850,000.
On April 1, 2004, Plain Road executed a Purchase and Sale Agreement (P&S) with Moncure for the property. The P&S was reviewed by an attorney for Plain Road, and signed by the manager for Plain Road and by Moncure. Paragraph 21 of the P&S reads:
If the Buyer shall fail to fulfill the Buyer’s agreements herein, all deposits made hereunder by the Buyer shall be retained by the Seller as liquidated damages, as Seller’s sole and exclusive remedy, without further recourse hereunder, in equity or at law.
As required for execution of the P&S, Plain Road delivered a check in the amount of $91,500 (5% of the purchase price) as an additional deposit to Coldwell Banker.[2]
After Plain Road failed to appear at the Closing, Coldwell Banker, instead of paying the deposit to Moncure as liquidated damages as provided in the P&S Agreement, has, until the present time, continued to hold Plain Road’s deposits. After representing Plain Road in another real estate transaction, Coldwell Banker, who was owed a brokerage commission by Plain Road, took an assignment of any interest of Plain Road in the escrowed funds as part of a settlement of its brokerage fee dispute, and then brought a complaint for declaratory judgment, as assignee of Plain Road, against its former client, Moncure, seeking a declaration that it is the rightful owner of the escrowed funds, on the ground that the liquidated damage clause in the P&S is unenforceable.
Moncure now moves for summary judgment on its counterclaims against Coldwell Banker for declaratory judgment, breach of fiduciary duty and violation of G.L.c. 93A.
DISCUSSION
Standard of Review
Summary judgment shall be granted where there are no genuine issues of any material fact and where the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’n of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Comm.’s Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
Liquidated Damages Clause
The defendant seeks summary judgment as to all claims relating to the liquidated damages provision of the P&S and the parties agree that the only issue in dispute in this case is whether the liquidated damages provision is enforceable.
*182 Massachusetts recognizes “ [¡liquidated damage clauses that provide for the seller of real estate to retain the buyer’s deposit.” Barry v. Thayer, CA No. 03-0307, *6 (Feb. 16, 2006, Barnstable County) (White, J.); see Lynch v. Andrew, 20 Mass.App.Ct. 623, 627 (1985). Indeed, “(i]t is well settled that ‘a contract provision that clearly and reasonably establishes liquidated damages should be enforced, so long as it is not so disproportionate to anticipated damages as to constitute a penalty.’” NPS, Inc. v. Minihane, 451 Mass. 417, 420 (2008) (holding liquidated damages clause requiring the purchaser of the license to pay, upon default, the amounts due for the entire remaining lease was enforceable against a holder of a ten-year lease for two luxury seats for New England Patriot professional football games at Gillette Stadium), quoting TAL Fin. Corp. v. CSC Consulting, Inc., 446 Mass. 422, 431 (2006).
“Whether a liquidated damages provision in a contract is an enforceable penalty is a question of law.” NPS, Inc. v. Minihane, 451 Mass. at 419. The burden is on the party challenging enforcement of the provision, here the plaintiffs, to show that a liquidated damages provision is unenforceable. NPS, Inc., supra.
Liquidated damages clauses are enforceable if actual damages from a breach of the agreement are difficult to ascertain at the time the contract is signed and the amount is a reasonable estimate, at the time, of the seller’s expected damages. Kelly v. Marx, 428 Mass. 877, 879 (1999). In Kelly, the Court stated, “a liquidated damages clause in a purchase and sale agreement will be enforced where, at the time the agreement was made, potential damages were difficult to determine and the clause was a reasonable forecast of damages expected to occur in the event of a breach.” Kelly, 498 Mass. at 879.
If a liquidated damages clause is found to be enforceable, then the seller of real estate is entitled to keep the buyer’s deposit as liquidated damages following the buyer’s failure to tender payment for real estate even if, as here, the seller finds another buyer to purchase the property for a price the same or higher than the original contract price. Kelly, 428 Mass. at 882. There, the Court held that it was appropriate to enforce a liquidated damages clause of the contract where the seller ultimately sold the property at a higher price to another party, and thereby suffered no loss but had realized an actual gain as a result of the buyer’s breach, because “potential damages were difficult to determine at the time of the contract formation, and the amount agreed to was a reasonable forecast of damages in the event of future breach, at that time.” Perroncello v. Donahue, 448 Mass. 199, 205 (2007).
Here, it is not disputed that a 5% deposit was the norm in the real estate industry for a purchase and sale agreement, and that Coldwell Banker customarily stipulated that at least 5% be retained.[3] Courts, moreover, have upheld 5% deposit clauses in other failed real estate transactions as a fair reflection of anticipated damages. Thus, in Kelly, the Court held:
[t]he liquidated damages were a reasonable estimate of the damage to the defendant. The deposit, five per cent of the purchase price, was a reasonable forecast of the defendants’ losses that would result if the buyers were to breach the agreement. These costs would arise from a host of issues relating to finding another buyer and waiting for an uncertain period of time before selling their property, and in light of the risk of an undeterminable loss that is dependent on many facts (primarily the shape of the real estate market at the time of the breach). The sum is not grossly disproportionate to the expected damages arising from a breach of the sale agreement, nor is it “unconscionably excessive” so as to be defeated as a matter of public policy.
Id. at 882. “(T]he proper course is to enforce contracts according to their plain meaning and not to undertake to be wiser than the parties, and therefore that in general when parties say that a sum is payable as liquidated damages they will be taken to mean what they say and will be held to their word.” Id. at 881, quoting Guerin v. Stacy, 175 Mass. 595, 597 (1900) (Holmes, C.J.).
The plaintiffs also argue that the liquidated damages clause is not enforceable because the defendant knew what his actual damages would be when the contract was signed, as he took specific action to hedge his losses by arranging with Fleet Bank, prior to the failed closing date, for a loan of $900,000 to permit his anticipated purchase of other real property that Monc-ure had intended to purchase with cash from the proceeds of the sale.
But what he could anticipate as losses just before the closing in June 2004 does not mean he could accurately calculate his anticipated losses when the P&S was signed in April. Actual damages in real estate transactions are particularly hard to ascertain at the time a contract is entered into because it is hard to predict when and for what price a property will resell if the deal falls through. Kelly, 428 Mass. at 881-82. As the Court stated in Kelly, “(a]s another court has correctly noted: ‘(T]he parties could not know what delays might ensue, what might occur in the real estate market, or how a failed sale might affect [the seller’s] plans. Real estate purchase and sale agreements are precisely the type of contracts that are amendable to liquidated damages provisions.’ ” Id. at 881-82, quoting Watson v. Ingram, 124 Wash.2d 845, 855 (1994).
Clearly, the failure of the sale did affect Moncure’s plan to purchase the other property. The fact that between notice of the impending breach and the breach itself Moncure was able to secure last-minute funding so as to permit his purchase of the other real estate does not mean that his actual damages were *183 ascertainable at the time the contact was entered into. Moncure is entitled to receive the deposit as liquidated damages in accordance with the express terms of the P&S agreement.
G.L.c. 93A Claim
Moncure also contends that Coldwell Banker violated G.L.c. 93A by suing Moncure in order to obtain Plain Road’s deposit to satisfy a debt owed by Plain Road to Coldwell Banker, thus placing its own interests ahead of its fiduciary duty to Moncure as escrow agent.
The Court, does not buy Coldwell Banker’s argument that its duty to Moncure ended with Moncure’s sale of his real property on August 9, 2004. Coldwell Banker had a perfect right to file an interpleader action to have a Court determine whether Moncure or Plain Road was entitled to the deposit. It could even have sued Plain Road and attached any interest Plain Road might be found to have in the deposit. It could not, in the Court’s view, ethically file an adversarial action, as assignee of Plain Road, to recover, for its own benefit, the very funds which had been entrusted to it as escrow agent.
General Laws c. 93A, §2(a) makes unlawful “unfair or deceptive acts or practices in the conduct of any trade or commerce.” G.L.c. 93A, §2(a). A real estate broker or one actively involved in the real estate transaction can be subject to liability under G.L.c. 93A. Rousseau v. Gelinas, 24 Mass.App.Ct. 154, 158-59 (1987); Mongeau v. Boutelle, 10 Mass.App.Ct. 246, 252 (1980). “It has been held, generally, that for conduct to .violate the standard of §2(a), (1) it must fall ‘within at least the penumbra of some common-law, statutory, or other established concept of fairness,’ (2) it must be unethical or unscrupulous, and (3) it must cause substantial injury to a consumer or another businessman.” Wasserman v. Agnastopoulous, 22 Mass.App.Ct. 672, 679 (1986), quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), rev. denied, 398 Mass. 1105 (1986).
The Court finds, based on the undisputed facts, that Coldwell Banker’s actions were unethical and unscrupulous, and that, in proceeding in this manner, it violated G.L.c. 93A.
ORDER
For the foregoing reasons and those stated in defendants’ briefs in support and by defendants’ counsel at the hearing, it is ORDERED that Moncure’s motion for summary judgment is ALLOWED. The Court DECLARES that the liquidated damages clause in the P&S agreement between Moncure and Plain Road is valid and enforceable, and that Coldwell Banker has violated G.L.c. 93A in its attempt to collect the funds entrusted to it in escrow for its own benefit.
The Court will schedule a hearing for assessment of Moncure’s damages.

 Combined with a $1,000 deposit to bind the Offer, the total amount held in escrow is now $92,500.00.

 Coldwell Banker’s own web page advises placing anywhere between 5% to 20% of the offer price in escrow to secure an offer. Here, the parties chose the low end of the range, 5% of the purchase price, as a reasonable forecast of the defendant’s losses if the buyer were to breach.