[No. 1711. Decided January 9, 1896.]

CHARLES REICHENBACH, *Respondent*, v. FRANK SAGE et al., *Defendants*, JOHN F. HART et al., *Appellants*.

BUILDING CONTRACT — DELAY IN COMPLETION — STIPULATION FOR LIQUIDATED DAMAGES.

A provision in a building contract for the recovery by the owner of ten dollars as damages for each day the completion of the building is delayed after the time stipulated, is a provision for liquidated damages and not for a penalty.

That the delay in completing a building within the time stipulated was due to the severity of the weather, does not relieve the contractor from liability under a provision for liquidated damages for delay in completion, if the work could have been carried on with safety by the exercise of extra means or effort during the continuance of such weather.

A contractor is not relieved from liability under a stipulation for liquidated damages for delay in the completion of a building after the time stipulated, by the fact that the delay was caused by the failure of sub-contractors to furnish certain necessary materials.

Appeal from Superior[Court, Pierce County.—Hon. FRANK ALLYN, Judge.  Affirmed.

*Town & Dillon,* for appellants.
*Taylor & McKay,* for respondent.

The opinion of the court was delivered by

DUNBAR, J.— On the 8th day of October, 1889, the respondent entered into a contract with the defendants Sage & Stratton whereby Sage & Stratton agreed to erect and complete a certain two-story residence with a stone basement in the city of Tacoma except the plumbing and the gas-fitting for the sum of $7,450.  They contracted that the work should be commenced on or before October 10, 1889, and that the entire contract should be performed as rapidly as possible consistent with durability and safety and should be completed on or before February 10, 1890, that in case of failure to complete the contract by February 10, 1890, they would pay as damages a sum equal to $10 for each and every day said work and contract was delayed beyond said date through any fault or negligence of Sage & Stratton.  The building was not completed until August 28, 1890, being a delay of 199 days, and plaintiff brings this action to recover $10 per day as stipulated damages.  The trial of the case resulted in a verdict for the plaintiff in the sum of $1,160, judgment was rendered and an appeal taken from said judgment.

The main features of the answer were:

1st. That the delay was caused by the plaintiff and his architect in this, that on account of the unusual

cold and wet weather they stopped the plastering of said building and that the contractors were not allowed to plaster during the cold weather, and that by such orders they were delayed and hindered, without their fault or negligence, and that the plaintiff thereby contributed to and caused such delay.

2d. That the winter of 1889–90 was unusually and extraordinarily cold and wet, and that it was impossible to proceed with the ordinary work of building.

3d. That the delay was caused by the failure of plaintiffs to furnish the plumbing and gasfitting for the house, and that the delay of plaintiff in this regard contributed to and was the cause of the delay complained of.

4th. That they were unavoidably delayed in procuring mill work for the building.

5th. That they were delayed by the failure of the plaintiffs to furnish the mantels, hearths and tiles and the art glass for the building.

6th. That the plaintiffs failed to furnish the details of the mill work at a proper time, and that they were delayed on that account.

We think the question which should be logically first settled in this case is: Was the contract to pay the damages specified, a provision for a penalty or for liquidated damages? There has been some conflict of authority on this question, each case, however, necessarily being decided with reference to its own particular circumstances and the particular language of the contract. We are satisfied, however, that the overwhelming weight of authority sustains the contention that this contract provides for liquidated damages; there is nothing inequitable in the terms of this provision; the amount does not seem to us to be excessive or unreasonable; it does not provide for the payment of

a sum in gross on the failure to comply with the contract at the expiration of the time limited, but the damages accrue according to the length of time the breach continues; and again, there is an element of uncertainty as to the real damages which would be maintained by the plaintiff which renders it more or less impracticable to be determined by a jury. Values of rents are fluctuating, and dwelling houses of the character and description of this one are ordinarily not built for rent at all, but for the convenience and comfort of the owners, and inasmuch as the parties saw fit to settle in advance the question of damages, and it seems to be on an equitable basis, we do not feel justified in disturbing that contract and holding that it was a contract which the parties had no right to make.

In *Texas, etc., Ry. Co. v. Rust*, 19 Fed. 239, it was held that—

"A provision in a contract to build a railroad bridge that, in case of non-completion of the bridge or providing a crossing for trains by a given date, the sum of $1,000.00 per week should be deducted from the contract price of the bridge for the time its completion or provision for crossing trains is delayed beyond that date, is a stipulation for liquidated damages."

In *Cotheal v. Talmage*, 9 N. Y. 551 (61 Am. Dec. 716), it was held that—

"Where the damages resulting from the breach of an agreement are in their nature entirely indefinite and uncertain, and the parties have mentioned a specific sum as liquidated damages, such sum will be regarded as damages, and not as a penalty, unless the amount be greatly disproportioned to any probable estimate of the actual damages."

To the same effect is *Ward v. Hudson River Bldg. Co.*, 125 N.Y. 230 (26 N. E. 256). In *Dwinel v. Brown*, 54 Me.

470, the court in the course of its remarks sustaining the provisions of a contract similar to this one, said:

"The parties themselves best know what their expectations are in regard to the advantages of their undertaking, and the damages attendant on its failure, and when they have mutually agreed upon the amount of such damages in good faith, and without illegality, it is as much the duty of the court to enforce that agreement as it is the other provisions of the contract. . . . It is not for the court to sit in judgment upon the wisdom or folly of the parties in making a contract, when their intention is clearly expressed, and there is no fraud or illegality. No judges, however eminent, can place themselves in the place or position of the parties, when the contract was made, scan the motives and weigh the considerations which influenced them in the transaction, so as to determine what would have been best for them to do, who was least sagacious, or who drove the best bargain. Courts of common law cannot, like courts where the civil law prevails, award such damages as they may deem reasonable, but must allow the damages, whether actual or estimated, as agreed upon by the parties. The bargain may be an unfortunate one for the delinquent party, but it is not the duty of courts of common law to relieve parties from the consequences of their own improvidence, where these contracts are free from fraud and illegality."

The same doctrine is announced in *Clement v. Cash,* 21 N. Y. 253, and in the case of *De Graff v. Wickham,* (Iowa), 52 N. W. 503, which was a case where the amount of forfeiture was the same as in this case, viz., $10 for every day the house should remain uncompleted, the same being a dwelling house, the court held that the sum named was liquidated damages, which might be recovered in case of a failure to complete the erection of the house according to the terms of the contract.

We think these contracts should be sustained, where no fraud or illegality appears, as a matter of policy, for it would frequently save expensive and trouble- some litigation, if the parties could contract in ad- vance with reference to damages, with the knowledge that such contracts would without question be en- forced.

We have examined the testimony in this case in detail, and a great deal of it we think was plainly in- admissible and was admitted over the objections of the plaintiff. A great deal of testimony was admitted with reference to the difficulties which beset the contractors in their efforts to procure stone for the foundation of the building. After admitting testi- mony of this character, however, the court instructed the jury that the failure of the defendants' sub-con- tractors to procure and furnish the stone, or their failure to secure and furnish the sash and doors in time to enable the defendants to complete the building in the time mentioned in the agreement, furnished no excuse for the failure of the defendants to complete the building within the time prescribed. It seems too evident for the indulgence of argument that this was a proper instruction. The plaintiff contracted with the defendants to furnish the stone and the sash and doors, and he cannot be relegated to a suit against any sub-contractors with whom the defendants may have seen fit to enter into a contract for furnishing these materials, for the breach of the contract on the part of such sub-contractors. The defendants' con- tract was to furnish these materials. It was for them to exercise good judgment with reference to the abil- ity of the sub-contractors to furnish these materials according to their contract, and they alone are re-

24—13 WASH.

sponsible for their delinquencies. The rule is thus announced by Shearman & Redfield on the Law of Negligence, § 14:

"One who is personally bound to perform a duty cannot relieve himself from the burden of such obligation by any contract which he may make for its performance by another person. Therefore, the fact that he may have used the utmost care in selecting an agent to perform this duty, or that he has entered into a contract with any person by which the latter undertakes to perform the duty, is no excuse to the person upon whom the obligation originally rested, in case of failure of performance. His obligation is to do the thing, not merely to employ another to do it."

It is next objected that the court erred in instructing the jury that the severity of the weather was not alone a sufficient excuse for the failure of the contractors, if regardless of this the work could have been carried on with safety and durability by the exercise of extra means or effort on the part of the defendants during the continuance of such weather. This instruction we think was right. When this contract was entered into, it was known that it would necessitate the doing of this work by the contractors during the winter months. They bound themselves to do the work between the 10th day of October and the 10th day of February, and they knew that they must necessarily do the plastering, which work it was claimed was delayed by reason of the cold weather and rain, during the winter months. Presumably they took this into consideration and demanded a higher price for their work by reason of these necessary inconveniences, and on account of the extra expenses incident to building in the winter. They might as consistently complain that the days were shorter in winter than in summer, and that they were de-

layed on that account. We think the authorities are substantially uniform so far as this proposition is concerned. In *Texas, etc., Ry. Co. v. Rust, supra,* it was held that the fact that the contractors were retarded in the work by high water, sickness of hands, etc., did not excuse them from performance of their contract, that they assumed these risks when they executed the contract without a provision exempting them from the consequences of such casualties; and in *Dermott v. Jones,* 2 Wall. 1, the supreme court of the United States, in passing upon this question said:

"It is a well-settled rule of law, that if a party by his contract charge himself with an obligation possible to be performed, he must make it good, unless its performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties, however great, will not excuse him."

And in commenting upon the case of *School Trustees v. Bennett,* 27 N. J. Law, 515, where a gale of wind arose without any of the usual pemonitory signs of a storm and prostrated the building, which when rebuilt fell down again solely on account of the condition of the soil, which was soft and miry, and where it was conceded that the defects of the ground were the cause of the second fall, the court held that the contractors having contracted to build and complete the building on a certain lot the loss fell upon the contractors, and said:

"The principle which controlled the decision of the case referred to rests upon a solid foundation of reason and justice. It regards the sanctity of contracts. It requires parties to do what they have agreed to do."

Of course these cases are all very much stronger, so far as any equities in the contractors were concerned, than the case at bar, where the parties are simply re-

lying on the negligence or inability of their own sub-contractors.    See, also, 3 Am. & Eng. Enc. Law, § 900 and notes.

The instructions of the court which were objected to, without mentioning them more specifically, were along these lines, and the instructions presented by the appellants and refused by the court presented the opposite view of the law.    We think the instructions were substantially correct, and the jury under the instructions of the court gave the appellants the benefit of all the delays which were caused by the interference or neglect of the respondent; though we are not satisfied from the testimony that there were any such delays.    It was testified by one of the contractors that the architect refused to allow them to proceed with the plastering and that they were more or less delayed by the plumbers' not doing their work on time, and further that they were delayed by reason of the architect's not having furnished them the details as readily as he should have done,— but all these questions of delay by the architect's not furnishing details, by the plumbers' not doing their work on time, and the question regarding the plastering, etc., were disputed facts, which were submitted to the jury.    The plumber who did the work and the architect flatly contradicted the assertions made by the witnesses of the defendants.    The architect swears positively that he did not forbid them to proceed with the plastering, but that he told them that he would not receive the plastering if it was frozen,— that they could put in " salamanders " which would warm the rooms, and proceed with their work.    Indeed, the contractors themselves testified that it would have been possible to warm the rooms with "salamanders" so that the work could have proceeded with safety.    Then, ac-

cording to their own testimony, the greater part of the delay was caused by the failure of their subcontractors to furnish them the rock for the foundation and the mill-work. Mr. Sage, one of the contractors, testifies on page three:

"The principal cause was in getting in the foundation. It was almost impossible to get the stone there. The next cause after the stone was the weather."

As we have already seen, their failure to get the stone there, and the mill-work, and the inclemency of the weather were matters which they could not plead in this action. The jury having heard all the testimony and having considered it under proper instructions from the court must be presumed to have reached the correct conclusion as to the amount of damages which should be awarded under the contract.

The judgment will therefore be affirmed.

HOYT, C. J., and ANDERS, SCOTT and GORDON, JJ., concur.