# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| NOVA CONTRACTING, INC., a Washington Corporation, | No. 48644-0-II |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| CITY OF OLYMPIA, a Washington Municipal Corporation, | |
| Respondent. | |

MAXA, A.C.J. – Nova Contracting, Inc. appeals the trial court's summary judgment dismissal of its claim that the City of Olympia breached the implied duty of good faith and fair dealing in its administration and termination of a construction contract between the City and Nova. Nova also appeals the trial court's award of liquidated damages to the City on the City's counterclaim for breach of contract.

We hold that the trial court erred in granting summary judgment in favor of the City on Nova's duty of good faith and fair dealing claim because Nova presented sufficient evidence to create a genuine issue of material fact that the City prevented Nova from attaining its justified expectations under the contract. As a result, we also vacate the trial court's award of liquidated damages and reasonable attorney fees to the City. However, because the liquidated damages issue may arise again on remand, we consider the enforceability of the liquidated damages

clause. We hold that the trial court did not err in ruling on summary judgment that the liquidated damages clause is enforceable if the City prevails on its breach of contract claim on remand.

Accordingly, we reverse the trial court's summary judgment dismissal of Nova's claim for breach of the duty of good faith and fair dealing, vacate the trial court's award of liquidated damages and reasonable attorney fees to the City, and remand for further proceedings consistent with this opinion.

FACTS

*Project Award*

In early 2014, the City published an invitation for bids to replace a culvert that conveyed a creek underneath a paved bike trail. In May 2014, the City accepted Nova's bid, although Nova alleges that some City staff wanted another contractor to get the bid and were looking for reasons to reject the bid. The parties executed a contract that incorporated the project's plans and specifications, Nova's bid proposal, and the Washington State Standard Specifications for Road, Bridge, and Municipal Construction.[1]

The contract required that Nova send several submittals for the City's engineer to approve before construction could begin, including a detailed description of the work, a bypass pumping plan, a work area excavation plan, and an access and haul route plan. The contract also required the City's engineer to approve other submittals before the work outlined in those submittals could proceed. The contract provided that the City would review these submittals,

---

[1] The record does not contain the entire contract, including many of the project-specific plans and specifications. In addition, on summary judgment the parties submitted only portions of the standard specifications.

that the City's decisions would be final, and that Nova would bear all risk and cost of work delays caused by non-approval of any submittals.

Under the contract, Nova was required to complete the work within 45 working days after the City issued a notice to proceed. The contract stated that Nova would be liable for liquidated damages of $939.46 per day if it failed to complete the project on time.

*Problems with Submittal Process*

On August 11, 2014, the City issued a notice to proceed. Nova's initial schedule indicated that Nova intended to mobilize to the construction site on August 12. But Nova could not mobilize as scheduled because of delays in the submission and approval of Nova's submittals. On August 19, the City sent Nova an email stating that it was clear that Nova would be unable to meet the project schedule and requesting a revised schedule.

The parties continued to have problems as the City rejected many submittals, in some cases rejecting re-submittals as well. Nova claimed that the City had been improperly rejecting submittals and that it could not meet the project schedule as a result. The City expressed concerns about the lack of sufficient information in several of Nova's submittals. By September, key submittals remained unapproved. Nova provided several submittals on September 4 that the City rejected.

*Notice of Default and Termination*

On September 4, the City sent Nova a letter stating that the City considered Nova to be in default on the contract for several reasons, including: (1) Nova's failure to mobilize to the site, (2) the lapse of 17 out of 45 total working days, (3) Nova's failure to provide an updated project schedule, (4) Nova's repeated failure to provide satisfactory versions of several submittals, and

(5) the City's concern that Nova would not complete the project within the time remaining. The letter concluded that the cumulative effect of these problems constituted a material default under the contract. The City stated that Nova had 15 days to cure the default by providing acceptable submittals, submitting an updated schedule, and showing that the project could be completed in the original time frame.

Also on September 4, Nova mobilized to the work site. But on September 8, the City delivered a stop work order to the site. The City's reasons for the stop work order included Nova's failure to notify the City before beginning any work, as required by the contract; Nova's attempts to gain access to the project site and its entry to the site without prior approval; and placement of equipment on the site without approval for use of that equipment.

Nova expressed surprise at the City's action. Nova pointed out that the City's first ground for default was Nova's failure to mobilize to the site, but that the City simultaneously demanded that Nova remove its equipment from the site. In multiple letters sent on September 9, Nova protested the default and responded in detail to the City's grounds for default.

On September 18, the City rejected Nova's protest. The City stated that the contract would be terminated unless Nova met the requirements in the September 4 default letter by September 19. In another letter dated September 18, the City responded to Nova's protest of the default. On September 19, Nova sent a lengthy letter contesting the City's grounds for terminating the contract.

On September 24, the City sent Nova a letter terminating the contract. The letter asserted that Nova had "chosen to assert protests and excuses rather than provide the requested documents and assurances." Clerk's Papers (CP) at 215.

*Nova's Lawsuit*

Nova filed a lawsuit against the City, asserting that the City had breached the parties' contract. Among other allegations, Nova claimed that the City's handling of Nova's submittals both imposed requirements that were not part of the project's specifications and delayed Nova's performance so that the project could not be timely completed. The City counterclaimed that Nova had breached the contract by failing to complete the project and therefore was liable for liquidated damages.

The City moved for summary judgment, arguing that it properly terminated the contract for default, that Nova was liable for liquidated damages for failing to complete the project on time, and that Nova was not entitled to recover damages. The City agreed to limit its claim for liquidated damages to the amount accumulated over the 45 days allowed for performance.

Nova argued that questions of fact existed as to why the project was not completed and that the City breached its duty of good faith and fair dealing and engaged in other conduct that constituted a breach of contract. Nova also argued that the contract's liquidated damages clause should not be enforced. The trial court granted the City's motion, dismissed Nova's claims, and awarded the City liquidated damages of $42,140.70. The trial court also awarded attorney fees to the City under RCW 39.04.240.

Nova appeals the trial court's summary judgment order.

ANALYSIS

A. STANDARD OF REVIEW

We review summary judgment orders de novo. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). On summary judgment, we construe all evidence and reasonable

inferences in favor of the nonmoving party.[2] *Id.* Summary judgment is appropriate when the

record shows "no genuine issue as to any material fact" and "the moving party is entitled to a

judgment as a matter of law." CR 56(c); *Keck*, 184 Wn.2d at 370. An issue of fact is genuine if

the evidence would be sufficient for a reasonable jury to find in favor of the nonmoving party.

*Keck*, 184 Wn.2d at 370. Summary judgment is appropriate if reasonable minds can reach only

one conclusion on an issue of fact. *Sutton v. Tacoma Sch. Dist. No. 10*, 180 Wn. App. 859, 865,

324 P.3d 763 (2014). To avoid summary judgment, the nonmoving party must set forth specific

facts that rebut the moving party's contentions and show a genuine issue of material fact. *Elcon*

*Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 169, 273 P.3d 965 (2012).

B.     DUTY OF GOOD FAITH AND FAIR DEALING

Nova argues that questions of fact exist concerning whether the City breached the duty of

good faith and fair dealing when considering Nova's submittals. Nova specifically argues that

the City prevented Nova from attaining its justified expectations under the contract.[3] We agree.

1.    Legal Principles

Under Washington law, every contract is subject to an implied duty of good faith and fair

dealing. *Rekhter v. Dep't of Soc. & Health Servs.*, 180 Wn.2d 102, 112, 323 P.3d 1036 (2014).

This duty obligates the parties to a contract to cooperate with each other so that each party may

---

[2] Nova argues that the trial court applied incorrect standards for evaluating the evidence on summary judgment, weighing the evidence instead of viewing it in the light most favorable to Nova. But because our review is de novo, how the trial court evaluated the evidence is immaterial to our analysis.

[3] Initially, the City argues that Nova waived all claims relating to the rejection of its submittals because Nova failed to submit a timely protest under section 1-04.5 of the contract. We disagree. Although Nova may have waived claims for the cost of work performed under the contract, section 1-04.5 does not apply to expectancy and consequential damages.

benefit from full performance. *Id.* The duty of good faith and fair dealing applies to public agencies. *Id.* at 114.

The duty of good faith and fair dealing "exists only in relation to performance of a specific contract term." *Badgett v. Sec. State Bank*, 116 Wn.2d 563, 570, 807 P.2d 356 (1991). As a result, the duty "cannot add or contradict express contract terms and does not impose a free-floating obligation of good faith on the parties." *Rekhter*, 180 Wn.2d at 113. And a party is entitled to require performance of a contract according to its terms. *Badgett*, 116 Wn.2d at 570. The duty "requires only that the parties perform in good faith the obligations imposed by their agreement." *Id.* at 569.[4]

To identify whether a breach of the duty of good faith and fair dealing has occurred, Washington courts have looked to a party's justified expectations under their contract. The Supreme Court has stated that "[t]he duty of good faith requires 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.' " *Edmonson v. Popchoi*, 172 Wn.2d 272, 280, 256 P.3d 1223 (2011) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 205 cmt. a (AM. LAW INST. 1981)). Similarly, the court in *Rekhter* approved a jury instruction stating that a plaintiff asserting a duty of good faith claim must prove that the defendant "acted in a manner that prevented the [plaintiff] from attaining his or her reasonable expectations under the contract." 180 Wn.2d at 119.[5]

---

[4] However, a violation of a contractual term is not required in order to find a violation of the duty of good faith and fair dealing. *Rekhter*, 180 Wn.2d at 111-12.

[5] Nova argues that a party breaches the duty of good faith and fair dealing by exercising its discretion unreasonably. The City argues that its actions should be reviewed under an arbitrary and capricious standard. But Washington law does not support either standard of liability.

But because a party's justified expectations depend on the contractual terms at issue, the particular requirements of the duty of good faith and fair dealing change with the context. *See* RESTATEMENT § 205 cmt. a ("The phrase 'good faith' is used in a variety of contexts, and its meaning varies somewhat with the context."). It therefore is difficult to define the duty of good faith in terms that are both precise and generally applicable. *See Best v. U.S. Nat'l Bank of Or.*, 303 Or. 557, 739 P.2d 554, 557 (1987).

The comments to Restatement § 205 provide some guidance by listing examples of improper conduct. Comment a notes that types of conduct can be characterized as bad faith if they "violate community standards of decency, fairness or reasonableness." RESTATEMENT § 205 cmt. a. Further, comment d states:

> Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

*Id.* cmt. d. The Restatement reaffirms that whether a defendant has violated the duty of good faith and fair dealing requires courts to identify whether the defendant has violated a plaintiff's justified expectations under the contract.

Significantly, the Supreme Court cases and the Restatement commentary do not suggest that the defendant must intend to harm the plaintiff. The Ninth Circuit reached the same conclusion when applying Washington law in *Scribner v. Worldcom, Inc.*, 249 F.3d 902 (9th Cir. 2001), a case cited in *Rekhter*, 180 Wn.2d at 113. The court in *Scribner* stated that a breach of

8

the duty of good faith and fair dealing does not require that the defendant acted with "affirmative malice" toward the plaintiff "or even that [the defendant] knew its decisions were inappropriate when it made them." 249 F.3d at 909. The court rejected the idea that "dishonesty or an unlawful purpose is a necessary predicate to proving bad faith." *Id.* at 910.

2. Application of Good Faith Duty

The City argues that the duty of good faith does not apply to its consideration of Nova's submittals. We disagree.

The duty of good faith and fair dealing applies when a party has discretionary authority to determine a contract term. *Rekhter*, 180 Wn.2d at 113. The party must act in good faith in setting and performing that term. *Id.* at 115. On the other hand, "if a contract gives a party *unconditional authority* to determine a term, there is no duty of good faith and fair dealing." *Id.* at 119-20 (emphasis added).

The City argues that under *Rekhter*, it had no duty of good faith because it had unconditional authority to determine whether to accept or reject Nova's submittals. The City points to section 1-05.1 of the contract, which stated that the City engineer's "decisions will be final on all questions," including the project's rate of progress, interpretation of project plans and specifications, and termination of the contract for default. CP at 92. The City asserts that this provision gave it total authority regarding Nova's submittals and therefore the duty of good faith did not apply to its decisions to reject them.

But this was not a situation where the City had an absolute right to reject all submittals for any reason. *Cf. Johnson v. Yousoofian*, 84 Wn. App. 755, 759-63, 930 P.2d 921 (1996) (noting that the duty of good faith did not apply where a lease included an unqualified statement

9

that a tenant could not assign the lease without the landlord's consent). The contract stated that the City "shall be satisfied that all the Work is being done in accordance with the requirements of the Contract." CP at 92. The City was therefore required to exercise its discretion in a manner that was consistent with those requirements. Further, although the contract provided that the City's "decisions will be final on . . . Interpretation of Plans and Specifications," CP at 92, that clause indicated that the City had complete authority, not that it could exercise that authority on any basis.

The contract provisions clearly provided the City with discretion over accepting or denying submittals. But that discretion was not absolute. And the only way both parties could obtain the benefits of the contact was if the City accepted submittals that complied with the contract's requirements. *Rekhter* requires that the duty of good faith and fair dealing apply under these circumstances. 180 Wn.2d at 113

We hold that the contract gave the City discretionary authority, not unconditional authority, to accept or reject submittals. As a result, the duty of good faith and fair dealing applied to the City's consideration of Nova's submittals.

3. Evidence of Breach

Nova's duty of good faith and fair dealing claim relates to a specific contract term: the City's review of Nova's submittals. Nova argues that it presented sufficient evidence to create a genuine issue of fact that the City breached its duty of good faith in the handling of those submittals. We agree.

The question here is whether the City's actions interfered with Nova's justified expectations under the contract. *See Rekhter*, 180 Wn.2d at 119; *Edmonson*, 172 Wn.2d at 280.

10

To support its claim, Nova presented the declarations of Nova's president Jordan Opdahl, Nova's project manager Dana Madsen, and a construction management expert, Frank Pita. These declarations allege that there were certain irregularities regarding the City's review of its submittals.

First, Madsen stated that the City's requirement that all submittals be approved before Nova could start any work was "very unusual and inefficient." CP at 316. Opdahl claimed that this requirement was contrary to industry practice, which only required approval of submittals before starting the work to which the submittals applied.

Section 7-28.1(4) did list nine specific submittals that were required to be submitted before construction. However, Madsen alleged that the City required the approval of *all* submittals before any work could start. For instance, Madsen alleged that the City refused to allow Nova to begin work because it had not approved a submittal for work that would occur in the last three days of the project. The contract did not expressly require that all submittals be approved before *any* work could begin. Other than the specific submittals for which pre-approval was required, section 1-05.3 stated that the City must approve any drawings before proceeding with the work that *those drawings* represent.

Second, Madsen stated that "the City failed to impose reasonable and proper requirements on Nova when rejecting our submittals" and that some of the City's requirements were "nonsensical or impossible." CP at 316. For example, Madsen claimed that the City repeatedly rejected submittal 9 because mill reports for the new pipe had not been provided, even though mill reports could not be prepared until the pipe was available for delivery and the City

11

prohibited delivery until all submittals were approved. The City does not argue that the contract required Nova to produce these mill reports before the pipe was available for delivery.

Third, Madsen stated that the City repeatedly rejected submittal 13 because the submittal did not provide that flaggers must accompany all vehicles coming onto the work site. But Madsen claimed that the project specifications did not require flaggers (as opposed to Nova's proposal for either a pilot car or flaggers), and therefore argued that imposing such a requirement would require a formal change order. Nevertheless, the City rejected the submittals even though Nova complied with the contract requirements. Opdahl also noted that the City requested that Nova perform other work in a more cumbersome and expensive manner than required by the contract.

Fourth, Madsen alleged that the City appeared to be reviewing submittals with the goal of rejecting them, looking for any excuse to do so. He referred to this as "gotcha" review. CP at 318. Madsen claimed that "the City was using the submittal process to prevent Nova from performing the contract rather than to assure itself that Nova's performance would match the contract." CP at 318. For example, Madsen claimed that the City rejected submittal 7C because a work layout plan was not attached even though it had been attached to submittals 7, 7B, and 8. Madsen also referred to submittals 10 and 12, which the City ultimately did approve but initially intended to reject for improper reasons.

Fifth, Madsen stated that the City rejected submittals for particular reasons and then rejected re-submittals for new and different reasons. For example, Madsen claimed that submittal 7 was rejected four times, each time for new and different reasons. Pita also noted this situation, pointing out that the City's conduct caused a serious problem for Nova because Nova

was faced with moving targets as it attempted to obtain approval of its submittals. Madsen alleged, "This creation of new excuses to reject resubmitted submittals that addressed the previous reasons given for rejection strongly indicates that the City did not intend to approve Nova's submittals and allow Nova to perform the work." CP at 319.

Sixth, as Pita emphasized, the City gave Nova mixed messages about mobilization to the project site. The City notified Nova that it was in default for not mobilizing to the site. But when Nova attempted to mobilize to the site, the City would not provide access and then claimed that Nova's entry onto the site was an additional basis for default.

Seventh, Opdahl stated that at the beginning of the project some City staff wanted another contractor to get the bid and were looking for reasons to reject the bid. Later, the City's engineer stated that "[t]his is not going to be another Martin Way project," a reference to a prior project that had resulted in Nova receiving extra compensation because of the City's design errors. CP at 278. Opdahl claimed that the engineer continued to hold a grudge against Nova because of that project.

Madsen summarized the City's conduct as follows:

> In my forty-six years in the construction industry, I have never seen a submittal process such as this one. Olympia acted in a manner calculated to prevent project performance by using changing standards and a "gotcha" review process on the submittals. Rather than working with Nova to get the job done, while assuring itself the work would be in accordance with the plans and specifications, Olympia actually undermined and delayed the work, refusing to allow it to proceed despite Nova's proven willingness and ability to perform the work in accordance with the plans and specifications. . . . Olympia misused the submittal process to prevent, rather than advance, proper contract performance – and that is objectionable and irritating.

CP at 320.

13

Pita stated an opinion based on this conduct that the City used the submittal process to "frustrate Nova's performance and put Nova into a position where it could not perform." CP at 253. He believed that the City "prevent[ed] contract performance by failing to approve submittals in a proper and orderly fashion." CP at 253. Pita further stated that "[t]he City's failure to approve the submittals and allow Nova to work was unreasonable, and may have been an attempt to prevent Nova's contract performance." CP at 254. Pita concluded that "the City's failure to reasonably approve submittals in a manner that allowed both parties to reach a reasonable conclusion is itself a breach of the contract." CP at 254.

The City argues that it was justified in rejecting Nova's submittals under certain contract terms, and those arguments may be legitimate. Further, each one of Nova's complaints, standing alone, may not support liability. But we hold that under the broad standard of liability adopted by the Supreme Court and viewing the evidence in a light most favorable to Nova, Nova's assertions and allegations taken together raise a question of fact of whether the City acted in a manner that prevented Nova from attaining its justified expectations under the contract. *See Rekhter*, 180 Wn.2d at 119. Accordingly, we hold that the trial court erred in granting summary judgment in favor of the City on Nova's implied duty of good faith and fair dealing claim.

C.      AWARD OF LIQUIDATED DAMAGES

The trial court granted summary judgment in favor of the City on its breach of contract counterclaim and awarded liquidated damages and reasonable attorney fees to the City. Because we reverse on Nova's duty of good faith and fair dealing claim, we vacate the trial court's award of liquidated damages and reasonable attorney fees to the City.

14

D.       ENFORCEABILITY OF LIQUIDATED DAMAGES CLAUSE

Even though we vacate the trial court's award of liquidated damages to the City, we address the enforceability of the liquidated damages clause because the issue may arise again on remand. Nova argues that the trial court erred in enforcing the contract's liquidated damages clause because (1) questions of fact exist regarding whether the clause represented a reasonable estimate of fair compensation and (2) the clause is unconscionable. We disagree.

1.       Legal Principles

A liquidated damages clause in a contract generally provides that a party in breach of the contract will be liable for an agreed amount. *See Minnick v. Clearwire US LLC*, 174 Wn.2d 443, 449, 275 P.3d 1127 (2012). Washington courts hesitate to interfere with the parties' right to contract as they please, even if application of a liquidated damages clause appears inequitable to the breaching party. *See Watson v. Ingram*, 124 Wn.2d 845, 852, 881 P.2d 247 (1994); *Salewski v. Pilchuck Veterinary Hosp., Inc.*, 189 Wn. App. 898, 908, 359 P.3d 884 (2015), *review denied*, 185 Wn.2d 1006 (2016). As a result, liquidated damages clauses are favored and "courts will uphold them if the sums involved do not amount to a penalty or are not otherwise unlawful." *Watson*, 124 Wn.2d at 850.

A liquidated damages clause is not a penalty and must be enforced if the agreed amount constitutes a reasonable prediction of fair compensation for the probable harm that a breach would cause. *Id.* at 850-51. The reasonableness of the estimate is evaluated at the time the contract was formed, not at the time of trial. *Id.* at 851. Courts can consider a party's actual damages only in evaluating the reasonableness of the estimate. *Wallace Real Estate Inv. Inc. v. Groves*, 124 Wn.2d 881, 893, 881 P.2d 1010 (1994).

Courts also have stated that a liquidated damages clause is enforceable only if probable damages are difficult to estimate, but this issue is more accurately treated as a factor in the reasonableness analysis. *Watson*, 124 Wn.2d at 853. The greater the difficulty in estimating the amount of harm, the easier it is to show that the estimate of harm is reasonable. *Id.*

Proof of actual damages is not required to uphold a liquidated damages clause. *Wallace Real Estate*, 124 Wn.2d at 892. However, "actual damages may be considered where they are so disproportionate to the estimate that to enforce the estimate would be unconscionable." *Id.* at 894.

2. Reasonableness of Estimate

Nova argues that questions of fact exist regarding the reasonableness of the liquidated damages clause because it is uncertain whether the City has suffered any damages as a result of the project not being performed. More specifically, Nova claims that the city could not suffer any actual damages from the delay of a contract of "convenience" as opposed to a contract of "urgency."

But as stated above, a liquidated damages clause can be reasonable even if the non-breaching party does not incur actual damages. *See Wallace Real Estate*, 124 Wn.2d at 892. And Nova has presented no evidence or even argument that the agreed liquidated amount was not a reasonable estimate of probable damages at the time the contract was formed. Nova also cites no authority for the proposition that a non-breaching party cannot suffer damages unless the contract involves a "necessary" or "urgent" project.

Further, in support of its summary judgment motion the City presented evidence of actual damages. The City submitted a declaration stating that it had spent much more than the

16

liquidated amount on the project, which would need to be duplicated on a future project. Nova did not produce any evidence contesting this statement. As the nonmoving party, Nova had the burden of coming forward with specific facts that show unreasonableness to avoid summary judgment. *See Elcon*, 174 Wn.2d at 169. We therefore hold that Nova presented no evidence that the liquidated damages clause was an unreasonable estimate of the City's probable damages.

3. Unconscionability

Nova argues that the liquidated damages provisions is unenforceable because it is unconscionable. We disagree.

a. Substantive Unconscionability

Whether an agreement is unconscionable is a question of law. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 396, 191 P.3d 845 (2008). An unconscionable contract clause is voidable. *Romney v. Franciscan Med. Grp.*, 186 Wn. App. 728, 735, 349 P.3d 32, *review denied*, 184 Wn.2d 1004 (2015). An agreement may be either substantively or procedurally unconscionable. *McKee*, 164 Wn.2d at 396. A contract is substantively unconscionable when it is one-sided or overly harsh. *Id*. Substantively unconscionable clauses have been described as clauses that are "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused." *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995).

A liquidated damages clause is unlawful if the estimated probable damages are too disproportionate to actual damages. *Wallace Real Estate*, 124 Wn.2d at 894. Nova argues that the liquidated damages provision here is one-sided and unduly harsh and that it provides the City with a windfall benefit. Nova references the fact that the City did not need to have the project

17

performed. Nova apparently relies on its claim that the City could not have incurred any actual damages from Nova's breach.

But once again, Nova has not provided any evidence that the City did not incur any actual damages. And Nova did not refute the City's evidence that it had spent more than the liquidated amount in work that would have to be duplicated when it again attempts to complete the project.

We hold that Nova has presented no evidence that the liquidated amount is too disproportionate to the City's actual damages, and therefore hold that the clause is not substantively unconscionable.

       b.    Procedural Unconscionability

Nova also argues that the liquidated damages clause was procedurally unconscionable. A contract is procedurally unconscionable when one party lacked meaningful choice in the agreement. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 305, 103 P.3d 753 (2004). Relevant considerations include the manner in which the contract was entered, whether the plaintiff had a reasonable opportunity to understand the contract's terms, and whether important terms were hidden. *Id.* at 304.

Nova further argues that the contract was an adhesion contract and that all adhesion contracts are procedurally unconscionable as a matter of law. But the case Nova cites, *Blakely v. Hous. Auth. of King County*, 8 Wn. App. 204, 505 P.2d 151 (1973), does not support this argument. In fact, in *Blakely* the court assumed the contract at issue was an adhesion contract, but held that the contested provision was not unconscionable. *Id.* at 213. Whether a contract is an adhesion contract is relevant but not determinative of procedural unconscionability. *Zuver*,

153 Wn.2d at 304-05. As the City points out, all standard public works contracts would be deemed unconscionable if Nova's position was correct.

Apart from claiming that the contract was an adhesion contract, Nova does not explain why this contract was procedurally unconscionable. No evidence suggests it was. Nova was a sophisticated project bidder, it had a full opportunity to review the contract provisions, and the liquidated damages clause was not hidden. Further, Nova previously had contracted with the City, and as a company engaged in work of this type it was in a position to understand the contract's terms.

We hold that Nova has presented no evidence that the contract was procedurally unconscionable.

4. Summary

There is no genuine issue of material fact that the liquidated damages clause constituted a reasonable estimate of probable breach of contract damages. Further, the clause was not unconscionable. Accordingly, we hold that the trial court did not err in ruling on summary judgment that the liquidated damages clause is enforceable and that the City is entitled to liquidated damages if it prevails on its breach of contract claim.

E.      ATTORNEY FEES ON APPEAL

The City argues that it should be awarded appellate attorney fees under RCW 39.04.240, which states that a party to an action arising out of a public works contract may be entitled to attorney fees. Because we remand this matter to the trial court for further proceedings, we do not award attorney fees to either party at this time.

No. 48644-0-II

CONCLUSION

We reverse the trial court's summary judgment dismissal of Nova's claim for breach of the duty of good faith and fair dealing, vacate the trial court's award of liquidated damages and reasonable attorney fees to the City, and remand for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

LEE, J.

MELNICK, J.

20